LAPHAM *v.* LACY.

EXECUTORS AND ADMINISTRATORS— WILLS — ESTATES OF DECE-
DENTS—PRESENTATION OF CLAIMS—NOTICE.

As a fiduciary towards those interested in decedent's estate, an
executor who was decedent's nephew is required, in the exer-
cise of good faith, to give the beneficiaries notice of filing a
claim for board and services rendered to the decedent, in
whose house the executor and his wife lived for many years,
and after decedent devised the homestead and half of the
residue of his estate to the executor and his wife, with ap-
parent intention to pay any obligation due to the latter, and
particularly where the executor and his wife led the other
beneficiaries to believe by words and conduct that they were
content with their share and had no claim against the estate.

Appeal from Ingham; Wiest, J. Submitted March 1,
1910. (Docket No. 157.) Decided April 1, 1910. Re-
hearing denied July 15, 1910.

Bill by George H. Lapham and others against Philo E.
Lacy and another to set aside the allowance of a claim
against the estate of Horace Lapham, deceased. From a
decree dismissing the bill, complainants appeal. Re-
versed, and decree entered for complainants.

*C. W. & W. S. Foster* and *Thomas, Cummins &
Nichols,* for complainants.

*Jason E. Nichols* (*Rollin H. Person,* of counsel), for
defendants.

MONTGOMERY, C. J. Horace Lapham died on Septem-
ber 25, 1904, leaving an estate valued by the appraisers
at $35,651. He left a will dated April 29, 1903, in which
he disposed of his estate. By the terms of the will, de-
fendant Philo E. Lacy and his wife were specifically de-
vised real and personal estate amounting to $13,675, and

the defendant Philo E. Lacy shared equally with the complainants in the residuary portion of the estate. The complainants in this case are either nephews or nieces of Mr. Lapham, with the exception of two or three who are children of the nephew, Frank Lapham, deceased, and by the terms of the will share equally with the defendants in the residuary portion of the estate only. The claims allowed by the commissioners amounted to $10,135.28. In addition there were mortgages of $6,500, which the executor was directed to pay. This will was duly admitted to probate, and the defendant Lacy was appointed and qualified as executor. Commissioners on claims were appointed, and defendant also some time prior to the last meeting of the commissioners on May 18, 1905, filed his claim against the estate for the board of Mr. Lapham during the last six years of his life, and for nursing during the last four years of his life, amounting to $4,660.

The relations between defendant Lacy and Horace Lapham are important. The deceased was an uncle of Lacy. He always remained a bachelor, and, when the defendant came to Lansing in 1878, he made his home with his uncle, not paying his board. In January, 1884, the defendant married his present wife, Helen Lacy, and they commenced housekeeping on Larch street, a short distance from the home of their uncle. In 1888 Jane Lapham, sister of Horace Lapham, died, and, as Horace had no other relatives in Lansing except the defendant and his wife, the defendant and his wife went to live with their uncle, and they continued to live with him until his death, a period of over 16 years. From 1888 until 1896 Mr. Lapham paid the defendant $5 a week for his board. In 1896, having met with some financial reverses, he discontinued this payment, and it was never resumed. He said he could not pay, and to let it run. No definite arrangement was ever made thereafter for the payment of board, and the bill in this case was made up from recollection. It was not made out until after the death of Horace Lap-

ham.   The defendant never made any charge for either board or services at the time they were rendered, and, in fact, made no charge on his books of any kind.  The claim as filed by the defendant was allowed by the commissioners on claims at the amount stated, without any proof being offered by the claimant, and without being sworn to. The legal notices to the creditors of the commissioners' meeting were duly published, but no personal notice was given to the complainants, and they never learned of the same until notified by their attorney whom they had employed in the meantime, Mr. Charles W. Foster, of Lansing, on or about the 1st of May, 1908.   The defendant Lacy knew the address of all the complainants, knew where they all lived, because he notified them all of the death of their uncle, and that they were beneficiaries under the will.

This bill was filed to set aside the allowance of the claim on the grounds, *first*, that the filing and the allowance of this personal claim by the defendant, without any notice to complainants and without any opportunity given them to defend against it, constituted a fraud upon the complainants and the court; and, *second*, that the claim does not rest on any contract, but was trumped up by defendant after the death of Mr. Lapham, and is therefore in fact illegal and fraudulent.

The defendant Lacy occupied the positon of trustee for complainants.   It appears by the testimony of Mrs. Kimball, one of the complainants, who is a niece of deceased, that she was in Lansing at the time the will was read, and that after the will was read, as Mrs. Kimball testifies, Mrs. Lacy said that such special provision for them as was made by the will was doubtless for and in recognition of and compensation for their care of Mr. Lapham, and that Mrs. Lacy seemed both pleased and satisfied with the will, and no dissatisfaction was expressed by Mr. Lacy at that time; that no claim was made by either Mr. or Mrs. Lacy that there was any agreement or contract between Philo E. Lacy and Mr. Lapham that the

former should be paid for the care and nursing of the latter; that, on the contrary, both Mr. and Mrs. Lacy stated that the services were rendered because of their love and affection for their uncle, and no money consideration was ever mentioned in any way. Shortly before the bill in this case was filed, Mr. Charles W. Foster had a conversation with Mr. Lacy concerning his claim, and he asked Mr. Lacy whether this claim arose out of any arrangement or agreement, and that Mr. Lacy replied that he had charged what he thought the services were worth, but that there was no agreement between Mr. Lacy and Mr. Lapham. These statements are denied in part, but we think they are substantially true.

We have examined the testimony of Mrs. Lacy with great care, and, while in the main she doubtless aims to state the circumstances as they occurred, we are convinced from the reading of her testimony that there never was any intention on the part of the defendant to charge his uncle for board or for the services rendered. Defendant was living in his uncle's house, rent free. For a time he paid $5 a week board. When it became a burden to him to do so, he ceased to pay, and the testimony of Mrs. Lacy upon this point is as follows:

"*Q.* You regarded your uncle as a man of some means, did you not?

"*A.* Yes, sir.

"*Q.* And you felt, if he was able to pay $5 a week board and wanted to, why it was agreeable?

"*A.* Yes, sir.

"*Q.* And, if he could not do it, why that was agreeable?

"*A.* Yes, sir.

"*Q.* Living there with your uncle as you did, you had no idea of charging him anything for what you did or what you furnished him?

"*A.* Only as he offered it. He wanted to do it. May I tell you what he said? We were the only ones that did for him, and he wanted to."

On redirect examination the witness had stated that Mr. Lapham had said it should be paid, and that she expected

to be paid. And in answer to the question by the court, "Did he ever explain to you how you were to be paid for it, in what way?" the witness replied:

"*A.* He told me that. He said: 'There is a sentiment in connection with this house. I built it, and have lived here all this time, and I want you to have it. If I didn't give it to you, they would not let you stay here two weeks, and this is just as a sentiment.' He says: 'I want you to keep it, and you shall have pay for my care extra if there is enough left.'"

Now, when it is understood that the will gives to the defendant and his wife the homestead, to which reference was made in this testimony, it is manifest just what was intended by any promise to pay. The record is barren of any promise made to the defendant Lacy, and it does not appear that he was informed of the statements claimed to have been made to Mrs. Lacy. We think that from the case the complainants have made out there never was a contract; that the defendant filed this claim as an afterthought; and that its extraordinary character was such that he was called upon in good faith to acquaint the complainants of the fact, particularly as he had thrown the complainant Mrs. Kimball off her guard by the statements made as to the compensation for services being provided by the will.

The decree of the court below will be reversed, and the relief prayed for will be granted, with costs of both courts to complainants.

OSTRANDER, HOOKER, BLAIR, and STONE, JJ., concurred.